IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff/Respondent,

vs.                                    NO. 05CV1163 MV/WDS
                                       NO. 03CR1225 MV

DAVID K. HAYNES,

        Defendant/Petitioner

MAGISTRATE JUDGE'S PROPOSED
FINDINGS AND RECOMMENDED DISPOSITION[1]

        This is a Motion to Vacate, Set Aside, or Correct Sentence filed under 28 U.S.C. § 2255 by David K. Haynes. Haynes is acting *pro se*. Respondent filed a response in opposition to the motion. Petitioner filed several supplemental memoranda. (Doc. 19, 24, 31) The United States Magistrate Judge, having considered the arguments of the parties, the record, relevant law, and being otherwise fully advised, finds the Motion should be denied. Because the issues are resolved on the pleadings, and the record establishes conclusively that Haynes is not entitled to relief, an evidentiary hearing is not necessary. 28 U. S. C. §2255; *Trice v. Ward* 196, F. 3d 1151, 1159 (10th Cir. 1999), cert. denied, 531 U. S. 835 (2000). The court makes the following findings and recommended disposition.

---

[1]Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. §636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

## CLAIMS

Haynes claims that he was denied effective assistance of counsel as guaranteed by the Sixth Amendment of the United States Constitution as a result of defense counsel's failure to adequately represent him during his criminal trial.  Specifically, he argues that his attorney: 1) failed to file a motion to suppress the evidence; 2) failed to make a motion to dismiss the indictment in connection with the destruction of evidence; and 3) failed to object to the admission at trial of an exhibit containing plant food.

## FACTUAL AND PROCEDURAL BACKGROUND

Early on the morning of June 20, 2001, Eddy County sheriff's officers went to the defendant's house located on Monte Vista Street in Carlsbad, New Mexico to arrest the defendant on an arrest warrant.   One officer was watching the back door of the house while another officer knocked on the front door of the house.  After the officer knocked on the front door of the house and received no response, the officer at the back of the house knocked on the back door.  As he was knocking, the door opened on its own.   The officer smelled a strong chemical odor coming from the house which, based on his training and experience, he associated with the manufacture of methamphetamine.   The officers entered the house and quickly searched it to see if the defendant or anyone else was there.  During the search the officers saw chemicals and equipment that they associated with the operation of a methamphetamine lab.  Members of the Pecos Valley Drug Task Force then applied for and obtained a state search warrant. The house was secured pending approval of the search warrant and the arrival of personnel trained to enter methamphetamine labs.

Once the search warrant had been obtained, the personnel trained to investigate methamphetamine labs donned chemical suits and entered the house.  They tested the air with a device used to detect flammable chemicals and detected potentially flammable chemicals.  The

2

officers opened the windows of the house and used a fan to ventilate it.  After the house had been ventilated, the officers searched for chemicals or anything that could be used to manufacture methamphetamine.  The officers found numerous items of interest in the defendants home, and inventoried and photographed those items.  The evidence included drug paraphernalia, unidentified chemicals, flammable chemicals, and other items that may have come in contact with those chemicals.  Three samples were taken for analysis in the lab.  Most of the other items, once photographed and inventoried, were destroyed.

On September 19, 2001, a grand jury returned an indictment against Haynes charging him with attempting to manufacture less than five grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(l) and (b)(l)(c).  Trial began on May 29, 2002, and ended two days later.  The jury found the defendant guilty.  On March 7, 2003, the district court remanded the defendant to the custody of the Bureau of Prisons to be imprisoned for a total term of 210 months.   The district court entered its judgment on April 3, 2003.  The defendant filed a timely notice of appeal on April 8, 2003.  The appeal was denied by the Tenth Circuit Court of Appeals on June 16, 2004.  The defendant then filed a Petition for a Writ of Certiorari which was denied on November 1, 2004. *Haynes v. United States*, 125 S.Ct. 446 (2004).  Subsequently, the defendant filed the instant §2255 Motion alleging his counsel was ineffective for failing to file a motion to suppress the evidence, failing to file a motion to dismiss the indictment, and for failing to object to the admission of certain evidence at trial.

## STANDARD OF REVIEW

Since Haynes is in federal custody pursuant to the judgment of a federal court, 28 U.S.C. §2255 applies.  A district court may grant relief under § 2255 only if it determines that "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the

constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Petitioner's claim of ineffective assistance of counsel, if proved, would constitute a denial or infringement of his constitutional rights.

## INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner's allegations are correctly styled as an ineffective assistance of counsel claim. The merits of an ineffective counsel claim are squarely governed by *Strickland v. Washington*, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). In *Strickland*, 466 U.S. at 686-87, the Supreme Court devised a two-step inquiry to determine whether a lawyer's poor performance deprived an accused of his Sixth Amendment right to assistance of counsel. In order to establish an ineffective assistance claim, the petitioner must show (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced [his] defense." *Foster v. Ward*, 182 F.3d 1177, 1184 (10th Cir. 1999), cert. denied, 529 U.S. 1027 (2000). To establish deficient performance, Haynes must show that his attorney made "errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment," *Williams v. Taylor*, 529 U.S. 362, 390, 146 L. Ed. 2d 389, 120 S. Ct. 1495 (2000), quoting *Strickland*, 466 U.S. at 687; and that his legal "representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To establish prejudice, Haynes "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*

The prejudice component focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Williams*, 529 U.S. at 393, FN17, citing *Strickland* 466 U.S. at 687, and *Kimmelman v. Morrison*, 477 U.S. 365, 374, 393, 91 L. Ed. 2d 305, 106 S. Ct. 2574 (1986); see also *Lockhart v. Fretwell*, 506 U.S. 364, 369, 122

L. Ed. 2d 180, 113 S. Ct. 838 (1993).  It is entirely appropriate for a habeas court to analyze the

prejudice prong first and exclusively, if that is the easier course.  *E.g. Scoggin v. Kaiser*, 186 F.3d

1203, 1207 (10th Cir. 1999).

**A.  Motion to Suppress Evidence**

Petitioner first argues that his attorney should have moved to suppress the evidence found

in the house after "discovering that the affidavit relied upon to obtain the search warrant contained

a deliberate falsehood."  The "deliberate falsehood" identified by the Petitioner is the claim by the

officers that they smelled a strong chemical odor which they associated with the production of

methamphetamine when they arrived at Petitioner's house to execute the arrest warrant.  Petitioner's

bases his claim that this testimony was false on the trial testimony of Sergeant Jimmy Glasscock,

who entered the house and tested the air with various instruments.  Sergeant Glasscock used a

Drager Pump to test for the presence of phosphene gas, hydrochloric acid and anhydrous ammonia,

three chemicals associated with the manufacture of methamphetamine.  Tr. 95  The tests were

negative for those three chemicals.  Tr. 99.  Sergeant Glasscock also used a Gas-Tech to test the air,

and determined that there was a significant concentration of an unidentified flammable chemical in

the air inside the house.   Tr. 97.  Sergeant Glasscock testified that the flammable gas inside the

residence was present in a concentration of 120 parts per million (ppm).  Sergeant Glasscock further

testified that a Gas-Tech reading of 10-20 ppm would indicate that the air is safe enough for officers

to work in the house without respirators.  Tr. 98.  Accordingly, the windows of the house were

opened and the local fire department supplied a fan to assist in ventilating the house.  Tr. 98.

Petitioner argues that because neither phosphene gas, hydrochloric acid or anhydrous

ammonia were detected, there could not have been a "strong chemical odor" at the house when the

officers first arrived.  Petitioner's argument is not well taken.  First, the 120 ppm reading on the Gas-

5

Tech clearly indicate that there was a significant concentration of a chemical in the air at Petitioner's house five or six hours after the first officers arrived at the address. Second, the three chemicals noted by Petitioner are not the *only* chemicals associated with the production of methamphetamine. Notably, the Petitioner's residence contained significant amounts of solvents that are also associated with the production of methamphetamine, and which are associated with a strong chemical odor. Furthermore, Respondent never claimed that Petitioner was actively engaged in the production of methamphetamine at the time officers arrived to arrest him. To the contrary, he was not even present at the house.

The Court agrees with Respondent that there simply is no foundation for Petitioner's assertion that the officers could not have smelled a strong chemical odor at the house, either at 6:30 in the morning or five or six hours later when Sergeant Glasscock arrived, merely because the Drager Pump did not show the presence of three specific chemicals. A minimum of three officers testified to the presence of the odor. Petitioner was not present at the house that day, and in any event did not testify at trial and has no direct knowledge of the nature or strength of the odor. He could not have offered testimony to support his attorney's motion to suppress. Sergeant Glasscock offered specific testimony that the Gas-Tech registered a significant concentration of a flammable chemical inside the residence.

In view of the fact that Petitioner is proceeding *pro se*, the Court has considered whether there were other grounds for suppression of the evidence offered at trial. The officers who arrived at the house early in the morning to arrest Mr. Haynes testified that the rear door was ajar. Tr. 64. The door opened somewhat more when one officer knocked on it. Tr. 64. The officers noticed a strong chemical odor coming from inside the house, which they associated with a methamphetamine lab. Tr. 65, 216. The officers testified that they entered the house and performed a quick search (a

6

"sweep") to ensure the safety both of the officers and any occupants, and to ensure that neither Mr. Haynes nor any other person was in the house either hiding or overcome by fumes.  Tr. 67-8, 218. When the officers swept the house the chemicals, equipment and drug paraphernalia which were subsequently removed and photographed pursuant to the search warrant were in plain view, primarily in the kitchen, laundry, and living room.  See Trial Exhibits 10-26.

The Fourth Amendment does not bar police officers from making warrantless entries and searches when they reasonably believe that a person within is in need of immediate aid.  *Mincey v. Arizona*, 437 U.S. 385, 392, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978).  The Tenth Circuit has applied the "exigent circumstances" exception to warrantless entry when the circumstances posed a significant risk to the safety of a police officer or a third party.  *United States v. Najar*, 451 F.3d 710; 2006 U.S. App. LEXIS 15171 (10th Cir. 2006).  The Tenth Circuit has specifically recognized that methamphetamine labs may present the sort of significant risk to the safety of police officers or third parties that justifies a warrantless search.  *United States v. Rhiger*, 315 F.3d 1283, 2003 U.S. App. LEXIS 519 (10th Cir. 2003).   The test to determine whether the risk of personal danger created exigent circumstances is two-fold, whether (1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable.  *United States v. Najar*, 451 F.3d at 718.

In this instance there is uncontroverted testimony that the officers who arrived at Petitioner's residence at 6:30 in the morning smelled a strong chemical odor coming from the residence.  The officers associated the odor with that of a methamphetamine lab.  Despite the early hour, the Petitioner did not respond to the officers' knocking on the door.  While it's entirely possible that this merely meant the Petitioner was not home, it was also objectively reasonable for the officers to be concerned that Petitioner had been overcome by the fumes in the structure.  Furthermore, the mere

presence of what appeared to be a methamphetamine lab provided the officers with an objectively reasonable concern that their safety, and that of neighbors, could be compromised.  Furthermore, the manner and scope of search, a "sweep" through the house that lasted no longer than several minutes, was reasonable under the circumstances.

It is also uncontroverted that the evidence which Petitioner believes his attorney should have moved to suppress was in plain sight in the laundry room, kitchen, and living room of the residence. In *United States v. Dighera*, 2 F. Supp. 2d 1377, 1998 U.S. Dist. LEXIS 6151 (D. Kan.) the criminal defendant moved to suppress evidence under similar circumstances.  Officers in *Dighera* had responded to a burglar alarm at the defendant's house, and arrived to find the door to the house open. The District Court agreed that "exigent circumstances" justified the officers' entry into the house to sweep it.  Upon entering the house, the officers observed substantial evidence of narcotics trafficking laying in plain sight. Based upon their observation of those materials in plain sight, officers obtained the search warrant.  The District Court in *Dighera* found that the combination of a search under "exigent circumstances" and observations of narcotics paraphernalia in plain sight justified the subsequent search warrant for the premises.  The Court denied the defendant's motion to suppress.

The Court concludes that had Petitioner's attorney made a motion to suppress, it too would have been denied.  An attorney does not provide ineffective assistance of counsel by failing to raise a meritless claim.  *U.S. v. Dixon*, 1 F.3d 1080, 1084 n.5 (10th Cir. 1991), *abrog. on other grds.*; *Florida v. White*, 526 F.3d 559, 119 S.Ct. 1555 ( May 17, 1999); *U.S. v. Cook*, 45 F.3d 388, 392-93 (10th Cir. 1995)(addressed in context of failure to raise issue on appeal);  *U.S. v. Young*, 862 F.2d 815, 820 (10th Cir. 1989) (counsel not ineffective for failing to file motion to suppress that probably would not have been granted),  *cited in United States v. Stanberry, unpubl. op.*, 1997 WL 694623

8

(10th Cir. (Okla.)).  Petitioner's argument is not well taken and his petition for habeas corpus on this ground should be denied.

**B.  Destruction of Evidence**

Petitioner's next claim is that his attorney failed to file a motion to dismiss the indictment due to the agents' destruction of evidence.  Petitioner alleges that the destroyed evidence was "exculpatory" and alleges that it was destroyed in bad faith.  Petitioner presents no evidence to support either allegation.  The solvents removed from Petitioner's home, for example, are flammable, corrosive, and dangerous and difficult to store.  Petitioner's explanation for his possession of these chemicals was that he was an artist, used the solvents for brush cleaning and to remov paint from a guitar that he was painting as a hobby.  All of that information was presented to the jury through Petitioner's witnesses.  There was extensive testimony about the containers of iodine found in Petitioner's residence.  Petitioner has not offered any explanation of how his defense would have been helped had the containers of iodine been retained as evidence.  Petitioner did establish that one of the camp fuel containers was empty and had been used for target practice with a BB gun.  That evidence was successfully presented to the jury through the photographs of the can and cross examination of the government's witnesses.

In order to obtain dismissal of the indictment based upon the government's destruction of evidence, a defendant must establish the following:

(1) the destroyed evidence was potentially exculpatory;

(2) the destruction was done in bad faith; i.e., the government knew of the potentially exculpatory value of the evidence when it destroyed the evidence; and

(3) the defendant has no alternative means of proving his point.

See *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). See also *California v. Trombetta*, 467 U.S. 479

(1984); *United States v. Cooper*, 983 F.2d 928, 930-31 (9th Cir.1993).

To prevail on his motion, the defendant must show that the officers actually knew, at the time the evidence was destroyed, that they were destroying potentially exculpatory evidence. See *Youngblood*, 488 U.S. at 56. To show bad faith, the defendant must demonstrate that the officers made a conscious effort to harm him or violate his rights. See *Trombetta*, 467 U.S. at 488. The defendant has fallen far short of making such a showing. The conduct of the officers in this case in no way demonstrates bad faith of the kind required by *Trombetta* and *Youngblood*. To the contrary, the procedures followed by the officers in this case were prudent and did not prejudice Petitioner's defense. Petitioner has presented no evidence that the destroyed evidence was potentially exculpatory, or that he lacked an alternative means to prove his point. Again, it is not ineffective assistance of counsel to fail to make a meritless argument. *Martin v. Kaiser*, 907 F.2d 931, 935 (10th Cir. 1990). Petitioner's argument is not well taken and his petition for habeas corpus on this ground should be denied.

**C. Admission of White Powdery Substance (Plant Food)**

Finally, Petitioner alleges that his attorney was ineffective when he failed to object to the admission into evidence of a white powdery substance that appeared to be plant fertilizer. Agent David Edmondson testified that he had found the powder on top of Petitioner's refrigerator, and that it had field tested positive for ephedrine, a substance associated with the manufacture of methamphetamine. However, when the powder was tested at the crime laboratory the substance did not test positive for ephedrine. Rather, the powder contained ammonium nitrates, and the chemist from the crime lab testified that he did not know of any connection between ammonium nitrates and the manufacture of methamphetamine. Tr. 281. On cross examination, the chemist testified that ammonium nitrates are commonly found in plant food. Tr. 285. Defense counsel also called the

10

Petitioner's mother to the stand, and she testified that she believed the powder was fertilizer that Defendant used in the garden.  Tr. 397-98.

The Court has reviewed the entire trial transcript and concludes that the testimony regarding the white powder/plant food was highly important for the defense's theory of the case, that it was not a mistake for defense counsel not to object to the entry of the powder into evidence.  The clear theory of Petitioner's defense was that the evidence collected by the investigating officers represented "dual use" items that could be found in a methamphetamine lab, but also could be found in a home for innocuous reasons.  Defense counsel offered the testimony of Petitioner's mother that Petitioner, as a quadriplegic, used pH strips not to test methamphetamine, but to test his own urine to ensure he did not have a urinary tract infection.  Tr. 392-393.  He also argued that the investigating officers assumed the white powder was ephedrine when it was merely plant fertilizer. Tr. 438.

Petitioner's argument regarding his counsel's decision not to object to the introduction into evidence of the white powder is not well taken.  Defense counsel's failure to object to its admission appears to be  a "matter of prudent trial strategy," and there is nothing in the record to indicate that Petitioner objected to the strategy at the time.  Hawkins v. Hannigan,185 F.3d 1146, 1152 (10th Cir. 1999).  Furthermore, the Court rejects Petitioner's argument that his defense was somehow prejudiced by the admission of the evidence.  To the contrary, it appears to the Court that defense counsel's trial strategy, while ultimately unsuccessful, was fundamentally sound.  The Court also notes that Petitioner submitted a letter to the Court from defense counsel stating that, while he had represented other methamphetamine defendants through pleas, this was the first methamphetamine case he had taken through a jury verdict.  As noted above, the Court reviewed the entire trial transcript and found that defense counsel was prepared for trial, vigorously cross examined the

prosecution's witnesses, had a clear understanding of the complicated chemistry involved in such cases, and had a cogent, coherent defense strategy.   Petitioner's petition for habeas corpus on this ground should be denied.

## DENIAL OF EVIDENTIARY HEARING

Petitioner has the burden of establishing the need for an evidentiary hearing.  *Birt v. Montgomery*, 725 F.2d 587, 591 (11th Cir. 1984)  Under §2255, there is a right to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  28 U.S.C. §2255;  *see also, United States v. Marr*, 856 F.2d 1471, 1472 (10th Cir. 1988)  A hearing is not required when a defendant's allegations of fact supporting his or her claims are conclusory and unsupported by the record, are shown to be meritless, or are "affirmatively contradicted" by the files and record.  *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977)  An evidentiary hearing on a claim of ineffective assistance of counsel is required only if the factual allegations, if true, would meet both prongs of the *Strickland* test.

For the reasons stated above, the court finds that Petitioner has not made a colorable showing that his counsel was inadequate in any way, let alone that his performance fell below an objective standard of reasonableness.  Accordingly, he can meet neither prong of the *Strickland* test and an evidentiary hearing is not necessary.

## RECOMMENDED DISPOSITION

The court recommends that Hayne's Motion Pursuant to 28 U. S. C. §2255 to Vacate, Set Aside, or Correct a Sentence by a Person in Federal Custody be DISMISSED.  Timely objections to the foregoing may be made pursuant to 28 U. S. C. § 636(b)(1)(C).  Within ten days after a party is served with a copy of these proposed findings and recommendations that party may, pursuant to §636(b)(1)(C), file written objections to such proposed findings and recommendation with the Clerk

of the United States District Court, 333 Lomas Blvd. NW, Albuquerque, NM 87102. A party must file any objections within the ten day period allowed if that party wants to have appellate review of the proposed findings and recommendation. If no objections are filed, no appellate review will be allowed.

**W. DANIEL SCHNEIDER**
**United States Magistrate Judge**